**CONNELL RICE & SUGAR CO., INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 87–1267.**

United States Court of Appeals, Federal Circuit.

Jan. 26, 1988.

Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for appellant.

Hillary Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson,

Asst. Director. Also on the brief was John Lom, Office of General Counsel, Dept. of Agriculture, Washington, D.C., of counsel.

Before DAVIS, NEWMAN, and ARCHER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Connell Rice & Sugar Co. (hereinafter "Connell") appeals the decision of the Board of Contract Appeals of the United States Department of Agriculture, granting summary judgment to the United States on the basis that Connell was liable for late delivery of the goods, and that the factual issues raised by Connell were not material to the result. *In re Connell Rice & Sugar Co., Inc.*, AGBCA No. 85-483-1 (Dec. 10, 1986). We reverse, and remand to the board for determination of the factual question of whether the government contributed to the delay in delivery, and redetermination of liability accordingly.

### Background

Connell contracted with the government, through the Commodity Credit Corporation of the Department of Agriculture, whereby Connell agreed to deliver medium grain milled rice under specified terms and conditions. Delivery was not timely, and liquidated damages were assessed. Connell's defense is that the government contributed to and caused the delay, by (1) advising Connell that if the ship Atalanti was delayed the delivery schedule could also be delayed and then rescinding that advice after Connell acted on it, (2) placing concurrent orders with other suppliers that, contrary to government policy, overburdened the mills and also caused shipping congestion in the Port of Lake Charles, which also contributed to the delay, and (3) that the USDA regulations, as well as principles of contract law, estop the government from assessing liquidated damages for a delay that it caused or to which it contributed.

Connell sought discovery in connection with this defense. The board, granting the government's motion for a protective order, held that the facts of governmental action as alleged by Connell, even if established,

were not material to Connell's contractual obligation to deliver milled rice by a date certain. The board assessed liquidated damages from the delivery date set in the contract, in the amount of $289,549.30.

## Discussion

█ In order for a motion for summary judgment to be granted all of the facts material to the result must either be free of dispute or, if disputed facts are resolved in favor of the non-movant, the movant must nevertheless be entitled to a judgment as a matter of law. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Balboa Insurance Co. v. United States*, 775 F.2d 1158, 1163 (Fed.Cir.1985).

█ Connell argues that the government's changed pattern of ordering rice from other purveyors greatly overburdened the southern mills, and that this government-induced situation contributed to Connell's inability to deliver milled rice in a timely way. The affidavits of both Connell's chief executive officer and the executive vice president of the Rice Millers Association "essentially supported", according to the board, Connell's position. The board held: "Overall, we conclude that questions of fact exist as to whether there was an established practice that the Government would administer its export programs so as not to overburden industry milling capabilities, that Appellant reasonably relied on such practice, that the government violated such practice, and that such violation was the proximate cause of Appellant's untimely deliveries." The board held that these facts were not material to Connell's obligations, holding, in essence, that the obligation to make timely delivery was absolute.

The governing regulations provide relief from liquidated damages under certain conditions. *General Terms and Conditions for the Procurement of Agricultural Commodities or Services*, Agricultural Stabilization and Conservation Service, United States Department of Agriculture, July 1981, Revision No. 1 ("USDA–1"). Article 69(b)(7) of USDA–1 states:

(7) Contractor shall not be liable for liquidated damages for delays due to causes which would relieve the contractor from liability for excess costs as provided in paragraph (c) of Article 70.

Article 70(c) provides that the contractor shall not be liable "for any excess costs if the failure to perform the contract arises out of causes beyond the control and without the fault or negligence of Contractor". These causes, as defined in article 2(i), include "acts of Government in either its sovereign or contractual capacity", but "the failure to perform must be beyond the control and without the fault or negligence of the party to the contract seeking excuse from liability."

Applying these provisions of USDA–1 to Connell's position on the facts, summary judgment against Connell should not have been granted. For example, on the issue of delay related to events surrounding the ship Atalanti: factual questions requiring resolution include not only whether the Agricultural Stabilization and Conservation Service freight forwarder, Ms. Ryan, had authority to make the statement that if the ship was delayed the delivery of rice could be delayed, but also whether Connell acted "without fault or negligence" in relying on that statement. If these factual questions and inferences are resolved in Connell's favor, summary judgment against Connell can not stand. Further, the board remarked that Connell's reliance on Ms. Ryan's advice accounted for at most three days of delay, the Labor Day weekend; but the record shows no mitigation based on these three days.

Although the board stated that "whether the Government was the proximate cause of appellant's untimely delivery may well excuse an appellant's payment of liquidated damages, in whole or in part", the board denied Connell discovery to develop this defense. The board concluded that it was irrelevant whether the government contributed to the delay in delivery caused by unavailable milling time, holding that Connell could have compensated for any governmental action that affected performance of the contract. The board held that Con-

nell "assumed the risk of unavailable milling time", and that Connell's contract obligations were not conditioned thereon.

■ Both the board, and the government in its brief, offer theories as to how Connell might have managed, at whatever cost, to obtain milled rice for timely delivery. These theories, in view of the USDA regulations, are relevant only to the question of whether Connell's failure to perform was "beyond [its] control and without [its] fault or negligence". If the government created the situation that caused or contributed to Connell's late delivery, it can not be held as a matter of law that Connell was required to exceed reasonable efforts in order to compensate for this unwarranted government action.

The government cites *Jennie-O Foods, Inc., v. United States*, 580 F.2d 400, 409–10 (Ct.Cl.1978), which held that "unanticipated economic hardship" did not excuse failure to perform where the contractor had not shown that "the product (healthy turkeys) was unavailable within the boundaries of a reasonable area." There was no issue in *Jennie-O* of governmental contribution to the failure to perform; nor was a theory of strict liability applied. The issues there raised, as here, are fact-dependent, and in *Jennie-O* were fully developed at trial.

■ Connell must be enabled to develop the facts pertinent to its defense that the government, acting in its sovereign or contractual capacities, contributed to the delay; the extent of that contribution; and whether Connell was at fault or negligent; for these facts are material to the issues of liability, and the extent thereof. The determination must be made as to whether exculpation has been shown under the circumstances. Public policy and the national interest, as well as the principles of contract law, so require. As the Court explained in *United States v. Brooks-Calloway Co.*, 318 U.S. 120, 122, 63 S.Ct. 474, 476, 87 L.Ed. 653 (1943), the purpose of the standard proviso in government contracts that authorizes such relief is:

> Thus contractors know they are not to be penalized for unexpected impediments to prompt performance, and, since their

bids can be based on foreseeable and probable, rather than possible hindrances, the Government secures the benefit of lower bids and an enlarged selection of bidders.

Although the government argues that Connell "failed to meet its burden" on summary judgment, the denial of discovery related to this defense contributed to this failure.

REVERSED AND REMANDED.