**Michael WALSH, Plaintiff,**

v.

**Jeffrey FINN, Defendant.**

**No. 91 Civ. 5303 (RPP).**

United States District Court, S.D. New York.

July 22, 1994.

---

Deborah S. Gordon, Scott L. Lessing, New York City, for plaintiff.

G. Oliver Koppell, Atty. Gen. of the State of N.Y., by Vincent Leong, Dept. of Law, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This action is brought by Plaintiff, a state prisoner, under 42 U.S.C. § 1983 and the Fourteenth Amendment for an alleged violation of his due process rights arising out of a disciplinary hearing presided over by Defendant on August 16, 1990. Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on the grounds that Defendant's findings were supported by sufficient evidence presented at the hearing thereby not depriving Plaintiff of his due process rights and because Defendant is entitled to qualified immunity.

## FACTS

On August 10, 1990, Corrections Officer Maria Velardo filed an inmate misbehavior report charging Plaintiff, Michael Walsh, with violating Inmate Rules 101.20 and 101.10. (Leong Aff. Submitted pursuant to local rule 3(g), ¶ 2). Inmate Rules 101.20 and 101.10 provide respectively that "inmates shall not intentionally expose the private parts of their bodies" and "inmates shall not, under any circumstances make any threat, spoken, in writing, or by gesture." Plaintiff was confined to his cell on August 10, 1990 to await a disciplinary hearing that would determine whether he had intentionally exposed his private parts and threatened a corrections officer. (Leong Aff.Ex. 1.).

The disciplinary hearing was conducted by Lieutenant Finn, the Defendant, on August 16, 1990. At the hearing, Defendant found Plaintiff guilty of the violations charged on the basis of the misbehavior report. Defendant sentenced Plaintiff to 180 days keeplock and 180 days loss of packages, commissary and telephone privileges. *Id.* at ¶ 8. Plaintiff remained in keeplock confinement until Donald Selsky, the Department of Correctional Services Director of Special Housing and Inmate Discipline, reversed Defendant's decision on the grounds that "contradictory evidence was presented at hearing which was not thoroughly resolved by hearing officer." *Id.* at ¶ 9. Thereafter, Plaintiff filed this suit pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment claiming a violation of his due process rights by Defendant's decision to punish him based solely on the misbehavior report.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the evidence offered demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Furthermore, in determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam).

### II. Due Process

Although prisoners retain rights under the Due Process Clause of the Fourteenth Amendment, these rights may be diminished by the needs and exigencies of the correctional system. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Notwithstanding such deference to the institutional needs of prisons, the Supreme Court has noted that prison officials may not infringe on prisoners' liberty interests through disciplinary pro-

ceedings without a modicum of evidence to support their decisions. *Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985). Accordingly, due process requires "that there be some evidence to support the findings made in the disciplinary hearing." *Id.* at 457, 105 S.Ct. at 2775. *See also Freeman v. Rideout,* 808 F.2d 949, 954–55 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988).

Plaintiff contends that the evidence which was relied upon in this case, an unsworn misbehavior report charging Plaintiff with violations which the report's co-signer could not verify in her testimony and which inmate Edward Miller, as well as Plaintiff, testified did not occur, does not satisfy the "some evidence" standard expostulated in *Hill.* In support of this contention, Plaintiff argues that to hold that a misbehavior report alone constitutes "some evidence", regardless of whether clearly relevant witness testimony nullifies its content, would seriously erode the inmate's due process rights. Defendant counters by asserting that, under *Hill,* courts are not allowed to assess the relative weight of the evidence when determining the "some evidence" standard thereby precluding this Court from considering Plaintiff's argument since it entails such an assessment.

In *Hill,* a prison guard heard sounds of a scuffle in a prison walkway. When he entered the walkway, he discovered an inmate with a swollen eye and a bleeding mouth. Subsequently, the guard saw three inmates fleeing together down the walkway. There were no others in the enclosed area. 472 U.S. at 447–48, 105 S.Ct. at 2769–70. The guard concluded that the three inmates had acted as a group in assaulting the victim, and so testified at their disciplinary hearings. Although exculpatory evidence—specifically the victim's assertion that the accused inmates did not assault him—was presented,

the Supreme Court held that even though the guard's evidence was "meager" it satisfied the due process standard. *Id.* at 457, 105 S.Ct. at 2775. The exculpatory evidence was irrelevant because, although it presumably could have allowed the disciplinary board to reach a contrary conclusion, it would not have nullified the evidence of guilt on which the board relied. As explained by the Court:

> "ascertaining whether this [some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S. at 455–56, 105 S.Ct. at 2774.

The Seventh Circuit, in interpreting the standard set forth in *Hill,* has determined that it is generally immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority based its conclusion. *Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir.1989). Once the court determines that the evidence is reliable, its inquiry ends—it should not look further to see whether other evidence in the record may have suggested a contrary conclusion. *Id.* at 1335.

■ In the present case, Corrections Officer Cradle, the co-signer of the misbehavior report, undermined the reliability of the admissible hearsay evidence upon which the Defendant based his finding by testifying in the disciplinary hearing that she was present on the occasion in question and that she did not see Plaintiff expose himself and that she did not hear him threaten Officer Velardo.[1] The Court's consideration of Officer Cradle's testimony does not violate the *Hill* holding that would bar the Court from

---

1. Section 251–3.1(b) of the Official Compilation of Codes, Rules & Regulations of the State of New York provides that "the misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident. Where more than one employee has personal knowledge of the facts, each employee shall make a separate report or, where

appropriate, each employee shall endorse his/her name on a report by one of the employees." N.Y.Comp.Codes R. & Regs. 7, § 251–3.1(b) (1992). Thus, since Officer Cradle endorsed the misbehavior report, her testimony indicating that she did not witness any of the alleged violations directly undercuts the reliability of the report.

**130**

weighing the evidence when determining whether the "some evidence" standard has been met since, in considering the testimony, the Court is addressing the reliability of the report. *Viens,* 871 F.2d at 1335. Accordingly, Defendant's finding was not supported by untainted evidence and summary judgment in Defendant's favor is denied.

### III. Qualified Immunity [2]

 Defendant also contends that summary judgment should be granted because he is entitled to qualified immunity. Under the doctrine of qualified immunity, public officials are not held liable for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To determine whether a right was clearly established at the time of the conduct in question the Second Circuit considers three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993) (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)). Defendant contends that he is entitled to qualified immunity because the Supreme Court and the Second Circuit have never held that a misbehavior report by the corrections officer who witnessed the inmate's violation is insufficient evidence on which to find him guilty of the charge. Although this Court's determination that the evidence relied upon by Defendant did not constitute "some evidence" was premised on the evidence in question being tainted evidence rather than on the fact that the evidence was just an unsworn misbehavior re-

port, the Defendant is entitled to qualified immunity since neither the Supreme Court nor the Second Circuit has held that tainted evidence does not meet the "some evidence" standard. Accordingly, the Defendant was not placed on notice that any disciplinary finding based on tainted evidence (i.e., an unreliable misbehavior report) constituted a violation of the Plaintiff's due process rights.

### CONCLUSION

Although Defendant's finding was not supported by evidence appropriate to satisfy the due process evidentiary standard expostulated in *Hill,* Defendant is entitled to summary judgment based on qualified immunity.

IT IS SO ORDERED.

---

**2.** Defendant had previously asserted the defense of qualified immunity on the grounds that it was *not* clearly established that an inmate had a right not to be confined to keeplock pending his administrative appeal of a disciplinary hearing.

This Court in its opinion and order of date Oct. 31, 1993 rejected defendant's assertion of immunity on the basis that the inmate's right in question had been clearly established by the time of the violation.