**NATIONWIDE TARPS, INC. d/b/a NTI Global, a New York Corporation, Plaintiff,**

v.

**MIDWEST CANVAS CORPORATION, an Illinois Corporation, Defendant.**

**No. 00–CV–1895.**

United States District Court, N.D. New York.

Jan. 28, 2003.

See, also, 228 F. Supp.2d 202.

John W. Sutton, Esq., Galway, NY, for Plaintiff.

Carter Conboy Law Firm (Joseph T. Perkins, Esq., of counsel), Albany, NY, for Plaintiff Nationwide Tarps, Inc. in Defense of the Counterclaims.

Melvin & Melvin, LLP, (Kenneth J. Brobycki, Esq., Elizabeth A. Genung, Esq, of counsel), Syracuse, NY, for Defendant.

### *MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. *INTRODUCTION*

The instant matter was subject of a prior Memorandum–Decision & Order, familiarity with which is assumed. *See Nationwide Tarps, Inc. v. Midwest Canvas Corp.*, 228 F.Supp.2d 202 (N.D.N.Y.2002). In short, Plaintiff Nationwide Tarps, Inc. ("NTI") commenced the instant action against defendant Midwest Canvas Corporation ("MCC") asserting claims for violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff contends that MCC's statements regarding the R value[1] of its Space–Age concrete insulating blankets are false, and therefore, violate section 43(a). Plaintiff complains that the true R value of MCC's blankets should reflect the insulating value of the blankets themselves, not the insulating value of the blankets plus the insulating value of a three inch airspace. Defendant denied the material allegations in the complaint and asserted various counterclaims.

NTI's prior motions for partial summary judgment on its Lanham Act claim, a preliminary injunction, a temporary injunction, and summary judgment on MCC's counterclaims were denied. *Id.* at 205–210. On October 29, 2002, the parties filed a stipulation discontinuing MCC's counterclaims with prejudice. (*See* Dkt. No. 67.)

MCC now moves for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of NTI's complaint in its entirety and an award of attorneys' fees. NTI cross-moves for summary judgment seeking a permanent injunction prohibiting defendant from using advertising that displays the results of three inch airspace thermal resistance testing as the R value or effective R value of its blankets; an order requiring defendant to provide or pay for a corrective advertising campaign and an award of attorneys' fees.

The motions were taken on the submissions without oral argument.

## II. *STANDARD OF REVIEW*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

1. An "R value" is a measurement of insulation's thermal resistance. The higher the R value, the higher the insulation's effectiveness.

law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

## III. DISCUSSION

### A. NTI's Cross–Motion For Summary Judgment

NTI's cross-motion for summary judgment is denied for the reasons stated in the prior Memorandum–Decision & Order. *Nationwide Tarps, Inc.*, 228 F.Supp.2d at 205–210. Plaintiff has not presented any new evidence or law warranting summary judgment in its favor.

### B. MCC's Motion For Summary Judgment

Section 43(a) of the Lanham Act provides, in pertinent part, that:

Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination there-of, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To prove a violation of section 43(a), NTI has the burden of demonstrating both that the challenged advertisement is false and that "the defendant[ ] misrepresented an 'inherent quality or characteristic' of the product." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir.2001) (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir.1997)). " 'Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers.' " *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995).

#### 1. Literal Falsity

"A plaintiff's burden in proving a literal falsity ... varies depending on the nature of the challenged advertisement." *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir.1992).

Where, as in the current case, defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden by showing that the tests did not establish the proposition for which they were cited.... [A] plaintiff can meet this burden by demonstrating that the tests were not sufficiently reliable to permit a conclusion that the product is superior.

*Id.; see also McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991) ("[T]he plaintiff must demonstrate that such tests are 'not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made.") (quoting *Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 119 (2d Cir.1984)).

NTI does not argue that MCC's tests do not establish the proposition for which they were cited. *See* Comp. at ¶ 23 (MCC's "representation concerning the 'R' value of its product when measured with a three inch air space is facially accurate."). The undisputed test results in the record substantiate MCC's advertising claims of the effective R value of its Space Age blanket when facing a three inch airspace. (*See* Sept. 21 2002 Handwerker Aff. at Ex. 1; Pl.'s Resp. to Local Rule 7.1 Stmnt. of Mat. Facts in Support of Def.'s Mot. for Summ. J. at ¶ 15.) Instead, plaintiff claims that "[i]t is a necessary implication from defendant's advertising message that defendant's 'Space Age' blanket delivers three to four times as much thermal protection as non-reflective blankets." (Pl. Mem. of Law in Opp. to Def's Mot. for Summ. J. at 4.) Plaintiff also again asserts that "Defendant's tests do not establish that the 'three inch numbers' are the 'R' value of the product nor THE one and only effective 'R' value of the product." (*Id.*) (emphasis in original). Plaintiff essentially argues that defendant should represent the R value of the blanket itself, and not the R value of the blanket in conjunction with a three inch airspace.

NTI's arguments are unpersuasive. MCC's advertising does not represent that its tests establish the R value of the blanket alone, or that its tests establish the one and only effective R value of the product. The only representations at issue here are MCC's advertising claims that when tested pursuant to ASTM C–518 or C–236, its product achieves certain R values when it faces a three inch airspace. (*See* Sept. 21 2002 Handwerker Aff. at Exs. 2–5; Pl.'s Resp. to Local Rule 7.1 Stmnt. of Mat. Facts in Support of Def.'s Mot. for Summ. J. at ¶¶ 17–20.) These claims are supported by MCC's testing. (*See id.* at Ex. 1.) Defendant has made no representations regarding the R value of its blanket when applied directly to concrete or under any other conditions, and no such claims are at issue here.

Moreover, NTI's own expert testified at deposition that a blanket tested pursuant to ASTM C–518 with a reflective layer inside the material (such as the Space Age blanket) would yield a higher R-value than the same exact sample without a reflective layer. (Oct. 28, 2002 Bobrycki Aff. at Ex. B, pp. 136–38); *see Castrol,* 977 F.2d at 63 ("Where … defendant's ad explicitly or implicitly claims that its product is superior, plaintiff must affirmatively prove defendant's product equal or inferior."). NTI's expert further testified that a blanket with a reflective layer achieved a higher R value than a blanket without a reflective layer when both were tested facing a three inch airspace. (*Id.* at pp. 158–64.); *see id.*

Relying on *S.C. Johnson & Son, Inc. v. Clorox, Co.,* 930 F.Supp. 753 (E.D.N.Y. 1996), NTI argues that MCC's claim does not reliably replicate actual use of the product. In *S.C. Johnson,* Clorox made an unqualified claim that its product kills up to 98% of consumers' roaches. The court found that this statistical representation "purposely eliminate[d] important real-world variables." *Id.* at 783. Specifically, the court found that "Clorox's laboratory and field studies do not purport to measure the accuracy of, and thus cannot establish, the [c]ommercial's claim to consumers that when consumers use Super-

Bait in their homes, it will consistently kill 'up to 98%' of their roaches." *Id.*

Here, MCC's claims are qualified. Defendant specifically states under what conditions its R values can be achieved, and further apprizes its audience that copies of the test reports are available upon request. Defendant does not purport to state how its product will perform in the field or elsewhere. In fact, MCC's more recent advertising states that "[a]ctual R-value in field usages may vary," and that "R-values may vary depending upon usage." (Sept. 21, 2002 Handwerker Aff. at Ex. 2.) Defendant represents only that if the Space Age blanket is tested pursuant to ASTM C–518 facing a three inch airspace, it will achieve a specified R value—a claim that is substantiated by its testing.

Accordingly, NTI has failed to proffer evidence from which a fair-minded trier of fact could reasonably conclude that MCC's tests do not establish the proposition for which they were cited (that MCC's blankets achieve certain R values when facing a three-inch airspace), or that MCC's tests are otherwise unreliable. *See Castrol,* 977 F.2d at 63.

### 2. *Likelihood of Customer Confusion or Deception*

NTI offers no admissible evidence of actual, or a likelihood of, deception or confusion of concrete insulating blanket customers. *See Resource Developers, Inc. v. Statue of Liberty—Ellis Island Foundation, Inc.,* 926 F.2d 134, 139 (2d Cir.1991) ("When a plaintiff seeks money damages ... the plaintiff must introduce evidence of actual consumer confusion .... [I]n ... cases [where a plaintiff seeks only injunctive relief] the plaintiff need only prove a likelihood of confusion among consum-

ers."). Plaintiff argues that it need not proffer such evidence because it is entitled to a presumption of confusion based on MCC's intentional deception. *Id.* at 140 (allowing an inference of actual consumer deception where the defendant engages in intentionally deceptive conduct). This argument too must fail. As previously discussed, plaintiff has failed to proffer any evidence that defendant engaged in any deception, let alone deliberate deception. *See id.* at 140–41. To the contrary, MCC's advertisements truthfully state that its product achieves certain R value when tested pursuant to ASTM C–518 or C–236 facing a three inch airspace.[2] Accordingly, plaintiff is not entitled to any presumption of consumer deception.

### IV. *CONCLUSION*

NTI has failed to demonstrate any triable issues of fact from which a fair minded jury could reasonably conclude that MCC's claims regarding the R value of its concrete insulating blankets are literally false or that there is actual, or a likelihood of, consumer confusion. Neither party has demonstrated a legal entitlement to attorneys' fees.

Accordingly, it is

ORDERED that:

1. Defendant Midwest Canvas Corporation's motion for summary judgment is GRANTED;

2. Plaintiff Nationwide Tarps, Inc. d/b/a NTI Global's cross-motion for summary judgment is DENIED;

3. The motions for attorneys' fees are DENIED; and

4. The complaint is DISMISSED.

---

**2.** MCC's more recent advertising states an "effective" R-value, *see Nationwide Tarps, Inc.,* 228 F.Supp.2d at 208, and that "[a]ctual R-value in field usages may vary." (Sept. 21 2002 Handwerker Aff. at Exs. 2 and 3.)

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.