# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-3234

_____

TonyaMarie Adams, individually and on behalf of A.H.

*Plaintiff - Appellee*

v.

City of Cedar Rapids

*Defendant*

Nathan Trimble

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 13, 2023
Filed: July 24, 2023

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

TonyaMarie Adams, for her son A.H., sued Officer Nathan A. Trimble under 42 U.S.C. § 1983, alleging he used excessive force by not giving a warning while searching with a canine trained to "bite and hold." Trimble moved for summary

judgment. The district court[1] denied qualified immunity on the excessive force claim. Trimble appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Just before midnight, on August 11, 2020, a convenience store was burglarized in Cedar Rapids. Police began looking for suspects. About an hour later, they saw a Mazda parked within a mile of the robbed store. When police approached, it sped off. Police pursued it until it crashed into a tree. Five male passengers fled on foot.

Police arrested one passenger, who had a firearm. He identified two of the other passengers, who police knew often carried guns. Other officers, including Officer Trimble, learned of the armed suspect and his identification of two other suspects. K–9 units were called to search for the remaining suspects.[2] About 1:00 a.m., Officers Bergen and Carton, both canine handlers, began searching. Five minutes later, Officer Trimble and his police dog, Ace, began searching. Ace was trained to physically apprehend an individual during a track or search by "biting and holding" until the officer instructs him to release. Cedar Rapids Police Department policy requires canine handlers to issue a verbal warning when releasing a K–9 dog, and before searching a structure or enclosure, to notify suspects that the dog will bite unless they make their presence known and surrender.

Officer Trimble did not issue any warnings. Officers Bergen and Carton each issued two warnings during their search:

---

[1]The Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]The day before the robbery, a large windstorm, a "derecho," hit Cedar Rapids, creating debris throughout the city and limiting visibility.

- At 1:03 a.m., Officer Bergen, over the squad car's PA system, announced: "Cedar Rapids Police K–9, subjects in the area surrender yourself now, you will be found and bit by the dog. Cedar Rapids Police K–9, subjects in the area surrender yourself now, you will be found and bit by the dog. This is your last and final warning to surrender yourself." [Issued from about 1124 Ellis Blvd. NW]
- At 1:03 a.m., Officer Carton gave a similar K–9 warning over his squad car's PA system. [Issued from about the intersection of I Ave. and 4th Street NW]
- At 1:12 a.m., Officer Carton gave a similar K–9 warning over his squad car's PA system. [Issued from about I Ave. and 9th St. NW]
- At 1:12 a.m., Officer Bergen saw an identified suspect under a car in the driveway of a residence at 1117 9th St. NW. Officer Bergen shouted a K–9 warning at the suspect. The suspect surrendered and was arrested.

While the other officers were apprehending that suspect, Officer Trimble and Ace walked east toward 8th St. NW. Ace alerted to "fresh human odor." Ace led Officer Trimble down an alley toward the backyard of a residence at 1108 8th St. NW. At 1:13 a.m., Ace approached a metal trailer in the backyard. The trailer was about 191 feet from where the last suspect was arrested. Ace located a person—later determined to be A.H.—underneath the trailer. As trained, Ace bit A.H.'s upper arm. A.H. was arrested and transported to a hospital for treatment of his bite wounds. The hospital treated the wounds with antibiotic ointment and released A.H.

TonyaMarie Adams, on behalf of her son A.H., sued the City of Cedar Rapids and Officer Trimble. The district court dismissed all claims against the City and all claims against Officer Trimble except for the claim for excessive force in violation of 42 U.S.C. § 1983. The district court denied qualified immunity to Officer Trimble, ruling that a genuine dispute of fact existed about the adequacy of the other officers' warnings and that the law was clearly established that Officer Trimble had to issue a warning. Trimble appeals, claiming he is entitled to qualified immunity because the law was not clearly established. "Whether qualified immunity shields a government official from suit is a question of law, which we review de novo." *Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000).

-3-

II.

A public official is entitled to qualified immunity unless (1) "the official violated a statutory or constitutional right" and (2) "the right was 'clearly established' at the time of the challenged conduct." ***Ashcroft v. al-Kidd***, 563 U.S. 731, 735 (2011), *quoting* ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" ***Kelsay v. Ernst***, 933 F.3d 975, 979 (8th Cir. 2019) (en banc), *quoting* ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987). Generally, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" ***Scott v. Harris***, 550 U.S. 372, 378 (2007), *citing* ***United States v. Diebold, Inc.***, 369 U.S. 654, 655 (1962). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." ***Id.*** at 380.

There is no dispute that Officer Trimble did not provide a warning when he deployed Ace or when Ace alerted to fresh human odor during the search. The parties dispute whether A.H. heard the warnings from the other officers. A.H., lying underneath a trailer, testified he did not hear any warnings. A teenager, sitting on the roof of a garage about 40-50 feet from A.H. in the opposite direction from the officers, testified he heard the warnings.

The district court concluded that, at summary judgment, the adequacy of the canine warnings given by other officers was a question of fact to be determined by a jury. Contrary to Trimble's passing arguments on appeal, the recordings and witness testimony do not establish that the warnings could be heard from the location where A.H. was lying on the ground. The evidence here does not blatantly contradict A.H.'s testimony; a reasonable jury could believe his story. *See* ***Scott***, 550 U.S. at 380 (ruling that the court erred by taking the facts most favorably to the non-movant

-4-

when a videotape, capturing all relevant events, "blatantly contradicted" his factual story such that "no reasonable jury could believe it."). Taking the facts most favorably to A.H., the district court correctly assumed he did not hear the warnings and did not have an opportunity to surrender.[3] *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard."); *Williams v. City of Burlington*, 27 F. 4th 1346, 1351 (8th Cir. 2022) ("This court may not make determinations of fact and credibility in assessing whether a party is entitled to qualified immunity.").

The district court ruled that *Kuha v. City of Minnetonka*, 365 F.3d 590 (8th Cir. 2003) and *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007) (en banc) clearly established that Officer Trimble was required to provide an adequate warning when searching with his police dog trained to bite and hold. *See L.G. through M.G. v. Columbia Public Schools*, 990 F.3d 1145, 1147 (8th Cir. 2021) (To show a right is clearly established, a plaintiff may "identify existing circuit precedent involving sufficiently similar facts that squarely governs the situation."). In *Kuha*, a suspect fled on foot after a routine traffic stop. *Kuha*, 365 F.3d at 595, *abrogated on other grounds by Szabla*, 486 F.3d at 391-92. Two officers arrived and searched together with a K–9 dog for the fleeing suspect. *Id.* Neither officer gave a K–9 warning. *Id.* at 596. Thirty minutes into the search, the dog located Kuha and, as trained, bit his leg. *Id.* at 595-96. This court held that the officers violated Kuha's constitutional right: "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender." *Id.* at 598. (The officers did receive qualified immunity because the law previously was not clearly established to give "notice that it arguably was constitutionally impermissible to use a police dog against Kuha without a verbal warning under the circumstances of this case." *Id.* at 602.) This court en banc assumed *Kuha's* ruling about the

---

[3]Asked about the issue of whether there is a violation, Officer Trimble stated that he "would not abandon that issue if we go to trial. However, we did not focus on it in this appeal."

constitutional violation was correct. *See Szabla*, 486 F.3d at 392 ("[W]e accept *Kuha's* Fourth Amendment holding for purposes of analysis, and assume there is a submissible case that Officer Baker was required to give a warning before using his police dog to bite and hold.").

Officer Trimble emphasizes that, unlike in *Kuha* and *Szabla*, other officers provided warnings here. *See Kuha*, 365 F.3d at 599 (stating "*officers* could have placed themselves out of harm's way . . . and given a loud verbal warning that a police dog was present and trained to seize by force.") (emphasis added). As discussed, the record here, viewed favorably to A.H. does not establish that other officers' warnings could be heard by A.H. to permit an opportunity for peaceful surrender.

Officer Trimble stresses that *Kuha* and *Szabla* recognize "exceptional cases" where a warning need not be given. *See id.* He claims the "exceptional case[]" here is the risk to officer safety where suspects are armed and may have just committed a burglary.

The *Kuha* decision did recognize that an officer may forego the warning requirement due to a personal safety risk, but said this would be "rare." *Id.* at 600. Explaining the need for a warning except in rare circumstances, this court reasoned that generally a warning "diminish[es] the risk of confrontation by increasing the likelihood that a suspect will surrender." *See id.* at 599 ("We agree that officer safety is paramount but disagree that the district court properly decided as a matter of law that requiring a verbal warning will put officers at increased risk."). Whether Officer Trimble was able to forego the warning requirement because of a risk to his safety was a factual question in this case. *See, e.g.*, *id.* ("[W]e see no reason why, in this case, a rational jury would be precluded from finding that the officers could have placed themselves out of harm's way—e.g., at the top of the hill where they had a good vantage point, or behind one of the nearby apartment buildings—and given a loud verbal warning that a police dog was present and trained to seize by force."). The jury is best suited to make this determination. *See Anderson v. Liberty Lobby,*

***Inc.***, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). There may be rare circumstances when the threat to officer safety is so obvious that it becomes a legal question, but this is not one of them.

Assuming the facts most favorably to A.H., he did not hear the other officers' warnings and did not have the opportunity to surrender. Officer Trimble had fair notice from this court's precedent that the failure to give a warning and an opportunity to surrender violated clearly established law. He is not entitled to qualified immunity.

\* \* \* \* \* \* \*

The district court's order denying qualified immunity is affirmed.

GRASZ, Circuit Judge, dissenting.

Given our limited jurisdiction to hear an interlocutory appeal of a denial of qualified immunity, we can only review "whether the uncontested evidence demonstrates that [Officer Trimble] violated a clearly established constitutional right." ***Brown v. Fortner***, 518 F.3d 552, 557 (8th Cir. 2008).

It is undisputed that Officer Trimble did not personally give a warning prior to Ace biting A.H. And the court has correctly assumed, for purposes of summary judgment, that A.H. did not hear the repeated warnings to surrender or risk being bitten that were given by other officers in the search area. Where the court errs, in my view, is in concluding the repeated amplified warnings in the search area were legally inadequate and that "Officer Trimble had fair notice from this court's precedent that the failure to give a warning and an opportunity to surrender violated clearly established law." *Ante*, at 7.

-7-

The court's conclusion seems to be premised on two legal suppositions: (1) our precedent imposes a subjective standard for canine warnings, rather than an objective standard; and (2) our precedent clearly establishes this subjective standard providing Officer Trimble with notice he must personally deliver a warning that is heard by the suspect, and he cannot rely on amplified warnings by other officers in the same search area that would reasonably be heard by the suspect. In my view, both suppositions are flawed.

It is clearly established in this circuit that when police utilize a canine trained to bite and hold, a suspect must be given a warning and opportunity to surrender. *See* ***Kuha v. City of Minnetonka***, 365 F.3d 590 (8th Cir. 2003), *abrogated on other grounds by* ***Szabla v. City of Brooklyn Park***, 486 F.3d 385 (8th Cir. 2007) (en banc). However, it is not clearly established that a police officer using a canine must personally deliver the warning or that the officer must be able to verify the warning was in fact heard by the suspect. We have never before held that it is constitutionally *unreasonable* for an officer to rely on canine warnings given by others that would reasonably be heard by suspects. Neither *Kuha*, nor any other precedent placed Officer Trimble on notice of the formulation of Fourth Amendment law utilized by the court today.

In *Kuha*, no warnings were given at all. 365 F.3d at 595. Here, there were four warnings provided by officers within the search area, three of which were on PA systems. Puzzlingly, the court's holding implies Trimble *himself* was constitutionally required to give additional verbal warnings. No previous case has established this requirement. The court's rationale in *Kuha* itself contradicted this notion when it explained, "officers could have placed themselves out of harm's way . . . and given a loud verbal warning that a police dog was present and trained to seize by force." *Id.* at 599. If officers can place themselves out of harm's way to give a warning, then it was reasonable for Trimble to believe it was constitutionally permissible to rely on the amplified warnings given by other officers. This is especially true given the power outage, storm debris, and danger of revealing his location to those he had reason to believe were armed suspects hiding in the dark.

-8-

In finding a dispute of material fact, the court relies on its conclusion that "a reasonable jury could believe [A.H.'s] story" about not hearing the warning. *Ante*, at 4. But that is not the right question. Instead, the court should be asking whether it was objectively reasonable for Officer Trimble to believe the suspect would have heard the warnings provided.

In sum, I do not believe case law supports the position that Officer Trimble was required to give additional warnings when multiple amplified warnings were already given in the search area, or that it was constitutionally unreasonable to rely on the objective sufficiency of those previous warnings. As such, the evidence does not show a violation of a clearly established constitutional right, and qualified immunity is appropriate here.

I respectfully dissent.

_____